UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES D. GRIEPSMA,<br><br>         Plaintiff,<br><br>  v.<br><br>CHRISTIAN J. ANDERSON, *et al.*,<br><br>         Defendants. | CASE NO. C19-181-RSM-MLP<br><br>REPORT AND RECOMMENDATION |

## I.  INTRODUCTION

James D. Griepsma ("Plaintiff"), proceeding *pro se*, filed a 42 U.S.C. § 1983 amended complaint raising several claims against 25 defendants. (Second Am. Compl. (Dkt. # 12) at 1-2.) On April 19, 2019, this Court submitted a Report and Recommendation recommending Plaintiff's action be dismissed against 23 of the 25 named defendants because Plaintiff failed to state a claim upon which relief may be granted. (R&R (Dkt. # 13) at 1.) On August 1, 2019, the Honorable Ricardo S. Martinez adopted this Court's Report and Recommendation, dismissing all defendants except for Dr. Julia A. Barnett ("Dr. Barnett") and Law Librarian Miriam Dominique Kastle ("Ms. Kastle") (collectively, "Defendants"). (Order (Dkt. # 21).)

REPORT AND RECOMMENDATION - 1

On April 2, 2020, Defendants filed a Motion for Summary Judgment ("Defendants' Motion"). (Defs.' Mot. (Dkt. # 59).) Defendants argue that they should be dismissed because: (1) Plaintiff failed to state claims upon which relief could be granted; and (2) Dr. Barnett and Ms. Kastle are entitled to qualified immunity. (*Id.* at 1.)

Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends Defendants' Motion (Defs.' Mot. (dkt. # 59)) be GRANTED and Plaintiff's remaining claims against Dr. Barnett and Ms. Kastle be DISMISSED with prejudice.

Consequently, the Court recommends that: (1) Plaintiff's Motion to be Present During Jury Trial and to Submit Additional Defendant's Interrogatory Information Requested (Pl.'s Mot. (dkt. # 62)), Plaintiff's Objections to this Court's previously filed Report and Recommendation (dkt. # 73), and Plaintiff's "Petition for Writ of Habeas Corpus Ad Testificandum for Production of Incarcerated Witness" (Pl.'s Pet. (dkt. # 79)) be DENIED as MOOT; (2) Plaintiff's "Proposed Objections to Defendants' Reply Supporting Summary Judgment Motion" (Surreply (dkt. # 84)) be DENIED and STRICKEN as an unauthorized responsive brief; and (3) Plaintiff's Motion for Appointment of Counsel (Pl.'s Mot. (dkt. # 78)) be DENIED.

## II.     BACKGROUND

### A.     Procedural History

On February 19, 2019, Plaintiff submitted his original complaint to the Court for filing. (*See* Compl. (Dkt. # 4-1).) He alleged his federal constitutional rights were violated during his pretrial incarceration at the Monroe Correctional Complex–Intensive Management Unit ("MCC-IMU") and the Skagit Community Justice Center. (*Id.*) Specifically, Plaintiff argued that prison officials failed to protect him from unsafe conditions, subjected him to excessive force, delayed or denied him medical care, restricted his access to the courts, instituted a retaliatory

REPORT AND RECOMMENDATION - 2

transfer, subjected him to malicious prosecution and an unlawful DNA swab, and denied him evidence in a criminal investigation. (*Id.* at 3-20.) Plaintiff also alleged MCC-IMU medical officials falsified his medical records and obtained an incomplete medical history. (*Id.* at 20-22.) On March 20, 2019, Plaintiff filed an amended complaint, which the Court declined to serve due to deficiencies in the amended complaint. (Order (Dkt. # 10).)

On March 28, 2019, Plaintiff filed a second amended complaint ("SAC"), identifying 25 defendants responsible for his alleged claims. (SAC (Dkt. # 12) at 1-2.) However, before Plaintiff's SAC was served, this Court submitted a Report and Recommendation recommending Plaintiff's action be dismissed against 23 of the 25 named defendants. (R&R (Dkt. # 13) at 15.) On August 1, 2019, Judge Martinez adopted this Court's Report and Recommendation, dismissing all defendants except for Dr. Barnett and Ms. Kastle. (Order (Dkt. # 21).)

On September 30, 2019, Defendants answered Plaintiff's SAC denying Plaintiff's allegations. (Defs.' Answer (Dkt. # 31).) The parties engaged in discovery through March 2, 2020, an extended discovery period which this Court granted upon Plaintiff's motion. (Order (Dkt. # 47).) On April 2, 2020, Defendants' Motion was filed regarding the remaining claims against Dr. Barnett and Ms. Kastle. (Defs.' Mot.)

On May 6, 2020, this Court submitted a Report and Recommendation to the Honorable Ricardo S. Martinez regarding Defendants' Motion. (R&R (Dkt. # 66).) However, several of Plaintiff's filings were received by the Court via email between April 23 and April 24, 2020, but not filed until May 12, 2020, due to an issue with the Court's Prisoner Electronic Filing Procedures. (Dkt. # 74.). These filings included: (1) Plaintiff's "Notice to Defendants for Constitutional Challenge to Motion for Summary Judgment" (dkt. # 68); (2) Plaintiff's Motion for an Extension of Time to File a Response to Defendants' Motion (Pl.'s Mot. (dkt. # 69)); (3)

REPORT AND RECOMMENDATION - 3

Plaintiff's Motion to File an Overlength Response (Pl.'s Mot. (dkt. # 70)); (4) Plaintiff's Response to Defendants' Motion ("Plaintiff's Response") (Pl.'s Resp. (dkt. # 71)); and (5) Plaintiff's Declaration in Response to Defendants' Motion (Pl.'s Decl. (dkt. # 72)). On May 8, 2020, Plaintiff filed a Motion to Substitute his previous declaration submitted with his Response. (Pl.'s Mot. (Dkt. # 67).) On June 3, 2020, this matter was referred back to this Court by Judge Martinez for consideration of Plaintiff's additional filings. (Dkt. # 74.)

On June 15, 2020, this Court granted Plaintiff's Motion for a New Deadline to File a Reply and denied Plaintiff's pending motions from the previously missing filings. (Order (Dkt. # 76).) On June 22, 2020, Defendants submitted their Reply.[1] (Reply (Dkt. # 77).)

### B. Plaintiff's Pending Motions

On April 3, 2020, Plaintiff filed a Motion to be Present During Jury Trial and to Submit Additional Defendant's Interrogatory Information Requested. (Pl.'s Mot. (Dkt. # 62).) Defendants submitted a response on April 16, 2020. (Defs.' Resp. (Dkt. # 64).) On May 20, 2020, Plaintiff filed Objections to this Court's previously submitted Report and Recommendation. (Dkt. # 73.)

On June 19, 2020, Plaintiff filed a "Petition for Writ of Habeas Corpus Ad Testificandum for Production of Incarcerated Witness" requesting the warden of the Washington Corrections Center present an incarcerated witness for jury trial. (Pl.'s Pet. (Dkt. # 79).) Plaintiff additionally

---

[1] On July 6, 2020, Plaintiff filed "Proposed Objections to Defendants' Reply Supporting Summary Judgment Motion" with an attached declaration ("Plaintiff's Surreply"). (Surreply (Dkt. # 84).) On July 10, 2020, Defendants filed a Motion to Strike Plaintiff's filing. (Defs. Mot. (Dkt. # 85).) Here, Plaintiff failed to file a notice of intent, or otherwise seek leave from the Court, to file additional responsive briefing regarding Defendants' Motion. *See* LCR 7(b); LCR 7(g). Consequently, Plaintiff's Surreply was not considered for the purposes of this Report and Recommendation.

REPORT AND RECOMMENDATION - 4

filed a Motion to Appoint Counsel on June 19, 2019.[2] (Pl.'s Mot. (Dkt. # 78).) On July 6, 2020, Defendants filed a response. (Dkt. # 81.) These matters are all now ripe for review.

**C.   Plaintiff's Claims**

On February 27, 2018, Skagit County charged Plaintiff with third degree assault of a law enforcement officer while resisting arrest relating to an incident occurring at a bus station. (Compl., Ex. M (Dkt. # 4-3) at 71-76, Ex. O (Dkt. # 4-4) at 10-12, 18-19.) At all times relevant to Plaintiff's remaining claims, Plaintiff resided at MCC-IMU, arriving as a pre-trial detainee on March 15, 2018.[3] (Compl., Ex. C (Dkt. # 4-2) at 29-34; Pl.'s Decl. at 2.)

> *i.   Delayed Medical Care Claim*

Dr. Barnett was MCC-IMU's Facility Medical Director during the relevant time identified by Plaintiff's complaint and oversaw the operation of the prison's medical clinic. (SAC at 7.) During his incarceration at MCC-IMU, Plaintiff complained about growths on his thyroid gland, pain in his chest due to an issue with his xyphoid process, and pain in his right hand because his hand allegedly did not heal properly after surgery in 2016. (SAC at 7-10; Compl., Ex. I (Dkt. # 4-3) at 36; Pl.'s Decl. at 6.) Throughout the end of March, April, and May

---

[2] The Court has considered Plaintiff's request for appointment of counsel multiple times since the inception of these proceedings. (Dkt. ## 11, 38, 44.) After review of Plaintiff's Motion, it is clear Plaintiff reiterates the same arguments addressed by the Court in its previous denials of appointment of counsel. *Compare id. with* dkt. # 78. Nothing has materially changed in the circumstances of this case to warrant a different result.

[3] In Plaintiff's Response, Plaintiff attempts to reargue claims against previously dismissed defendants Jacob Grillo, Adam Yanasak, and Aaron McIntosh. (Pl.'s Resp. at 7-8, 21, 24, 26, 50.) Plaintiff also discusses allegations concerning an illegal arrest and imprisonment, as well as new allegations concerning two non-defendants: Anthony Gonzalez and Brian Weston. (*Id.* at 4, 12, 21.) Judge Martinez previously adopted this Court's Report and Recommendation recommending dismissal of defendants Grillo, Yanasak, and McIntosh, and all claims against them. (*See* R&R (Dkt. # 13) at 15; Order (Dkt. # 21).) Accordingly, the Court rejects consideration of Plaintiff's claims regarding previously dismissed defendants and claims. The Court additionally rejects consideration of any new allegations not previously addressed in Plaintiff's SAC, or concerning unnamed defendants, as identified in Plaintiff's Response. *See Trishan Air, Inc. v. Federal Ins. Co.*, 635 F.3d 422, 435 (9th Cir. 2011) (claim raised in opposition to motion for summary judgment, but not in complaint, was not properly before the district court).

REPORT AND RECOMMENDATION - 5

2018, Certified Physician Assistant Jacob Grillo ("PA-C Grillo") served as Plaintiff's prison primary care provider and signed multiple Care Review Committee ("CRC") requests for Plaintiff to refer him to an outside medical provider for diagnosis and treatment of his ailments. (SAC at 7-8; Compl., Ex. A (Dkt. # 4-2) at 17-21, Ex. F (Dkt. # 4-2) at 57-58, Ex. I at 38-41, 44; Pl.'s Decl. at 7-8.)

The CRC requests specifically sought referral for potential surgical intervention regarding Plaintiff's chest pain, right hand pain, and an additional ultrasound on his chest and thyroid gland. (SAC at 7-8; Compl., Ex. A at 14, 17-21, Ex. F at 57-58, Ex. I at 38-41, 44; Pl.'s Decl. at 7.) In his referrals, PA-C Grillo noted Plaintiff had a benign lump on his thyroid gland that did not require intervention and that Plaintiff's right hand did not present any acute findings. (Compl., Exs. E-F (Dkt. # 4-2) at 49, 52, 56.) PA-C Grillo noted that though Plaintiff had "a protruding xyphoid process" it seemed "fix[ed] in place," with a recommendation for diagnostic and treatment for xypholdynia. (Compl., Ex. F at 61-62; Pl.'s Decl. at 7.) PA-C Grillo additionally indicated another doctor had reviewed the case and mentioned that "surgery is sometimes indicated and sometimes curative" for Plaintiff's chest issue. (*Id.*) On May 9, 2018, and on June 8, 2018, Dr. Barnett determined the CRC requests based off PA-C Grillo's referrals concerning Plaintiff's chest and thyroid were not medically necessary under the Washington Department of Corrections Offender Health Plan.[4] (Compl., Ex. H (Dkt. # 4-3) at 21-22.)

---

[4] Despite Plaintiff's contentions in his Response, as a pretrial detainee at MCC-IMU, Plaintiff's healthcare was regulated by the Offender Health Plan and not Intrastate Agreement No. K8291. (Pl.'s Resp. at 8-10.) Intrastate Agreement No. K8291 addressed the division of work and terms of cost reimbursement between Skagit County and the Department of Corrections in caring for Plaintiff while housed at MCC-IMU and did not provide for different healthcare coverage. (*See* Compl., Ex. C at 32-33, Ex. I at 50.) The Offender Health Plan describes the criteria and process for determining what health services the Department will provide to inmates. To be covered by the plan, services must be: (1) either "medically necessary" or "necessary for the health and safety of the incarcerated community for public health and safety reasons"; (2) required by law, regulation or Department policy; (3) ordered by a Department practitioner; (4)

REPORT AND RECOMMENDATION - 6

On May 18, 2018, Plaintiff submitted a health services kite requesting an appointment to see Dr. Barnett. (Compl., Ex. I at 36; Pl.'s Decl. at 7.) On June 5, 2018, Dr. Barnett responded to Plaintiff's request "[t]his may take several weeks to arrange in my schedule. In the meantime, please continue working with PA-C Grillo." (*Id.*). Plaintiff subsequently sought, and allegedly obtained, a court order directing Dr. Barnett to meet with Plaintiff within 30 days from the date of the order. (SAC at 9; Compl., Ex. J (Dkt. # 4-3) at 53; Pl.'s Decl. at 8.)

On September 3, 2018, Plaintiff met with Dr. Barnett and she referred Plaintiff physical therapy for his hand pain. (SAC at 9; Compl., Ex. J (Dkt. # 4-3) at 53; Pl.'s Decl. at 8.) Plaintiff subsequently submitted a kite alleging that Dr. Barnett ignored his chest pain and thyroid issue during this visit. (Compl., Ex. J at 53.) Dr. Barnett responded to Plaintiff's kite that he "was given ample opportunity to bring up all issues at [his] visit." (*Id.*)

Plaintiff filed several administrative grievances against PA-C Grillo and Dr. Barnett while housed at MCC-IMU concerning his medical claims and referral requests. (Compl., Ex. A at 13-14, 16-17, 19, 21.) The grievance counselors at each level of appeal responded that Plaintiff's health concerns were adequately addressed by PA-C Grillo and Dr. Barnett in accordance with the Offender Health Plan. (*See Id.*) On December 11, 2018, and on December 17, 2018, Plaintiff's CRC requests for referrals concerning his chest and thyroid ailments were approved. (Compl., Ex. K (Dkt. # 4-3) at 63-65.)

In his SAC, Plaintiff alleges: (1) Dr. Barnett failed to timely schedule a medical appointment with him; (2) Dr. Barnett falsified CRC forms that denied his requests to consult

---

authorized according to Department procedure; and (5) delivered in the most cost-effective manner and location consistent with safe, appropriate care. A copy of the plan is available at: https://www.doc.wa.gov/corrections/services/health.htm#ohp (last visited July 9, 2020).

REPORT AND RECOMMENDATION - 7

specialists; and (3) Dr. Barnett kept incomplete medical records, all in violation of his Eighth Amendment rights. (SAC at 7-10, 20-21.) Plaintiff alleges he suffered from constant physical pain in his chest and right hand, breathing difficulties, anxiety, panic attacks, depression, suicidal thoughts, mental anguish, inability to use his right hand, disfigurement, and that he has given up on "being in relationship due to insecurities and inability to earn a living with my life earned skills, experience, and qualifications" because of how his medical situation was handled. (*Id.* at 10.)

This Court previously determined only Plaintiff's claim alleging Dr. Barnett delayed Plaintiff's medical appointments may proceed. (R&R at 7-8.) Therefore, the Court will only consider this specific allegation concerning Dr. Barnett as Plaintiff's additional claims were previously dismissed. (*Id.*)

    **ii.**    **Access to the Courts Claim**

Ms. Kastle is MCC-IMU's law librarian. (SAC at 13.) In his SAC, Plaintiff generally alleges Ms. Kastle violated his constitutional right to access the courts by interfering and delaying the preparation of his motions for filing.[5] (*Id.* at 13-14, 17-18; Pl.'s Decl. at 2-5.) Plaintiff alleges Ms. Kastle did so by: (1) failing to make copies for him, even with a week's prior notice, because she only worked on Tuesdays, Wednesdays, and Thursdays; (2) failing to provide five DVDs of discovery regarding his ongoing criminal matter by keeping them on her

---

[5] In his Response, Plaintiff argues that "MCC authorities" delayed scheduling, or failed to transport him, to scheduled computer appointments for legal research and denied him access to legal materials. (Pl.'s Resp. at 30; Pl.'s Decl. at 2-3.) Plaintiff additionally argues that Ms. Kastle "was ineffective legal assistance regarding the law." (*Id.*) This Court already dismissed Plaintiff's previous allegations regarding access to courts claims that did not involve Ms. Kastle, and therefore, rejects consideration of these claims. *See* R&R (Dkt. # 13) at 8-10, 15; Order (Dkt. # 21).) Moreover, Plaintiff's SAC failed to allege Ms. Kastle had any personal involvement regarding an alleged delay, or failure to transport, nor plead an ineffective legal assistance claim against her. *See Trishan Air, Inc.*, 635 F.3d at 435.

REPORT AND RECOMMENDATION - 8

desk for approximately four months; and (3) failing to sign for the delivery of an additional DVD of discovery. (SAC at 13-14, 17.) Plaintiff additionally argues that even after he was given the DVDs, he has been unable to review them because Ms. Kastle failed to provide a device that can support them, the DVDs have been altered or tampered with by Ms. Kastle, and some DVDs are missing. (*Id.* at 14, 17; Pl.'s Decl. at 3-4.)

### III.  LEGAL STANDARDS

#### A.  Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. The opposing party must

REPORT AND RECOMMENDATION - 9

present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

### B. Section 1983 Claims

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of his rights protected by the Constitution or created by federal statute; and (2) the violation was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Id.* (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

### IV. DISCUSSION

Plaintiff submitted facts in this matter through exhibits attached to his initial Complaint (dkt. # 4), through his SAC (dkt. # 12), and in a declaration submitted with his Response (dkt. # 72). Consequently, because Defendants' Motion and Reply accepts as true the facts outlined in

REPORT AND RECOMMENDATION - 10

Plaintiff's complaints, declaration, and exhibits, there are no genuine issues of material fact regarding Plaintiff's claims against Defendants. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248 (A disputed fact is material if it "might affect the outcome of the suit under the governing law.") As explained further below, Plaintiff fails to allege facts sufficient to maintain either of his remaining claims.[6]

### A. Delayed Medical Care

Because the conduct complained of occurred during Plaintiff's confinement as a pretrial detainee, his rights derive from the Due Process Clause of the Fourteenth Amendment and not the Eighth Amendment's prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Correspondingly, a pretrial detainee's right to adequate medical care arises under the Due Process Clause of the Fourteenth Amendment and is evaluated under an objective deliberate indifference standard. *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018).

The elements for a claim alleging a violation of the right to adequate medical care are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

---

[6] Having decided Plaintiff's allegations fail to state claim against Dr. Barnett or Ms. Kastle in the first instance, the Court declines addressing whether Defendants are entitled to qualified immunity. Qualified immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308, (2015); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, a qualified immunity analysis is unnecessary because Plaintiff fails to allege facts demonstrating Defendants' actions violated his constitutional rights.

REPORT AND RECOMMENDATION - 11

*Id.* at 1125. In considering the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn [] on the facts and circumstances of each particular case.'" *Id.* (quoting *Castro v. County of Los Angeles.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoted citations omitted)). A defendant's "mere lack of due care" is insufficient to state a Fourteenth Amendment claim. *Id.* (quoting *Castro*, 833 F.3d at 1071 (quoted citations omitted)). Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (quoting *Castro*, 833 F.3d at 1071).

A serious medical need exists if the failure to treat an inmate's condition "could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)). However, the inmate must show harm resulting from the delay. *Id.*

A difference of opinion between an inmate and medical authorities regarding proper medical treatment does not give rise to a § 1983 claim. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981); *see Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Prison authorities retain wide discretion in the medical treatment afforded to prisoners. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (finding mere differences of opinion between a prisoner and prison medical staff, or between medical professionals regarding the proper course of treatment, does not give rise to a claim under § 1983); *Jackson*, 90 F.3d at 332.

Here, Plaintiff fails to establish Dr. Barnett's alleged delay in scheduling a medical appointment regarding the CRC denials for referrals put him at a substantial risk of suffering serious harm. It is clear from the undisputed facts that PA-C Grillo, as Plaintiff's primary care provider, provided regular and appropriate medical attention to Plaintiff's various ailments based

REPORT AND RECOMMENDATION - 12

on the evidence submitted in the record. (*See* Compl., Exs. A-F (Dkt. # 4-2) at 13, 17, 21, 47-52, 59-63, Exs. I-J (Dkt. # 4-3) at 37-41, 44, 53-61; Pl.'s Decl. at 6-8.) The undisputed facts additionally demonstrate Dr. Barnett was actively reviewing, assessing, and using her professional judgment in treating Plaintiff based on PA-C Grillo's evaluations throughout Plaintiff's time at MCC-IMU. (*See* Compl., Ex. A at 58, Ex. F at 58, Exs. H-J (Dkt. # 4-3) at 21-22, 36, 44, 53; Pl.'s Decl. at 6-8.)

Through coordination with PA-C Grillo, Dr. Barnett concluded Plaintiff's chest and thyroid ailments presented as stable and that neither ailment was medically necessary to address under the Offender Health Plan. (Compl., Ex. H at 21-22.) Plaintiff submitted his kite requesting an appointment with Dr. Barnett in mid-May 2018 and continued to follow up with PA-C Grillo throughout that summer concerning his medical ailments. (Compl., Ex. I at 36-41; Pl.'s Decl. at 7.) Plaintiff eventually met with Dr. Barnett in early September 2018, received a referral for physical therapy concerning his hand pain, but apparently failed to address his chest and thyroid issues with Dr. Barnett. (Compl., Ex. J at 53.) In December 2018, Plaintiff ultimately received approval for his CRC requests. (Compl., Ex. K at 63-65.)

Plaintiff alleges he suffered constant pain, breathing difficulties, anxiety, and depression, amongst other ailments, because of Dr. Barnett's alleged delay, yet Plaintiff fails to substantiate these claims with any evidence demonstrating he genuinely suffered harm from Dr. Barnett's denial of his CRC referral request. (*See* SAC at 10.) Based on the record before the Court, Plaintiff additionally fails to demonstrate the alleged delay in receiving an appointment with Dr. Barnett—roughly a three-month wait between when Plaintiff requested to see Dr. Barnett in mid-May 2018 to when Plaintiff received an appointment with Dr. Barnett in early September 2018—resulted in any additional injury or prolonged pain from his ailments. *See Jett*, 439 F.3d at

REPORT AND RECOMMENDATION - 13

1096; *McGuckin*, 974 F.2d at 1059-60. Nothing has been submitted in the record demonstrating medical action was later taken regarding Plaintiff's chest and thyroid issues or that either issue was exacerbated by an alleged delay caused by Dr. Barnett's denial of his CRC referral requests. Therefore, due to the undisputed facts demonstrating Plaintiff's health conditions were actively managed by his health care providers and the absence of any additional injury, Plaintiff fails to demonstrate he sustained any substantial risk of serious harm necessary to maintain his claim against Dr. Barnett. *Gordon*, 888 F.3d at 1124-25.

Though Plaintiff disagreed with his care providers' assessments, a difference of opinion between an inmate and his treating provider fails to state claim. *See Jackson*, 90 F.3d at 332; *Franklin*, 662 F.2d at 1344. This is particularly so when considering the wide latitude afforded to a medical provider's discretion concerning treatment decisions. *See Toguchi*, 391 F.3d at 1058. In this case, it appears Plaintiff merely disagrees with Dr. Barnett's assessment and treatment decisions regarding his CRC referral requests. Accordingly, the Court recommends that Plaintiff's claim alleging a delay in his right to receive adequate medical care be dismissed.

### B.     Access to the Courts

Prisoners have a constitutional right under the Fifth Amendment to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817. 821 (1977); *Lewis v. Casey*, 518 U.S. 343, 346 (1996). Courts distinguish between two types of right of access to courts claims: (1) those involving the right to affirmative assistance; and (2) those involving an inmate's right to litigate without active interference. *Silva v. DiVittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds*, *Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). The first type imposes an affirmative duty on prison officials to assist inmates "in the preparation and filing of meaningful legal papers," either by establishing an adequate law library or by providing adequate

REPORT AND RECOMMENDATION - 14

assistance from persons trained in the law. *Silva*, 658 F.3d at 1102 (quoting *Bounds*, 430 U.S. at 828). In the second type, prison authorities are prohibited from "actively interfering" with a prisoner's right to file civil actions in court that have a reasonable basis in law or fact. *Silva*, 658 F.3d at 1103-04 (citations omitted).

To establish a violation of the right of access to courts, an inmate must show: (1) a nonfrivolous legal attack on his conviction, sentence, or conditions of confinement has been frustrated or impeded; and (2) this denial harmed his ability to pursue non-frivolous legal action—that is, the inmate must show actual injury. *See Lewis*, 518 U.S. at 353-55. An "actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348.

Plaintiff's allegations regarding Ms. Kastle fail to allege sufficient facts demonstrating an access to courts claim of either type. The undisputed facts show there is no evidence Ms. Kastle actively interfered with Plaintiff's access to the DVDs or did anything of a malicious nature to impede Plaintiff's ability to access or view the DVDs. (Compl., Exs. P-Q (Dkt. # 4-4) at 41-43, 45, 47, 65-68; Pl.'s Decl. at 2-5.) Instead, Plaintiff's kite requests and declaration show she regularly assisted Plaintiff with his requests regarding the DVDs, arranged time to view the DVDs, and assisted in obtaining software to view the DVDs to the extent permitted under Department of Corrections policy. (Compl., Exs. P-Q at 41-43, 45, 47; Pl.'s Decl. at 3.) Plaintiff's allegations that Ms. Kastle did anything maliciously with the DVDs are merely conclusory and unsupported by the record. The overall record before the Court also fails to reveal Plaintiff suffered any actual injury due to the alleged delay in receiving and being unable to view the DVDs from Ms. Kastle. *See Silva*, 658 F.3d at 1102; *Lewis*, 518 U.S. at 348, 354-55

REPORT AND RECOMMENDATION - 15

Similarly, the undisputed facts do not show Ms. Kastle's alleged failure to provide prompt copies of requested documents harmed Plaintiff in his pursuit of his claims. (Compl., Exs. P-Q at 39-40, 43-48, 53-55; Pl.'s Decl. at 2.) From the offender kites submitted in the record, it appears Ms. Kastle routinely provided Plaintiff with requested copies when possible under Department of Corrections policy and when she was scheduled to work. (Compl., Exs. P-Q at 39-40, 43-48, 53-55.) Consequently, Plaintiff's allegations regarding Ms. Kastle fail to demonstrate Plaintiff suffered an actual injury due to Ms. Kastle's actions or that she actively interfered with Plaintiff's access to the courts. *See Silva*, 658 F.3d at 1102; *Lewis*, 518 U.S. at 348, 354-55

Moreover, while Plaintiff was incarcerated at MCC-IMU, Plaintiff had the aid of court-ordered standby counsel and a court-ordered investigator assisting him with his case. (Compl., Ex. H at 27-29, Ex. Q (Dkt. # 4-4) at 51-53; Pl.'s Decl. at 2-3.) Plaintiff's investigator could access, retrieve, and make copies of any document, or view any video recording, which had been filed with the court for Plaintiff. In fact, it appears from the SAC that Plaintiff utilized his investigator for this exact purpose. (*See* SAC at 17-18.) Accordingly, the Court recommends that Plaintiff's access to courts claims against Ms. Kastle be dismissed.

## V.    CONCLUSION

For the foregoing reasons, this Court recommends Defendants' Motion (Defs.' Mot. (dkt. # 59)) be GRANTED and this matter be DISMISSED with prejudice.

Because of the Court's recommended dismissal of this action, this Court recommends that: (1) Plaintiff's Motion to be Present During Jury Trial and to Submit Additional Defendant's Interrogatory Information Requested (Pl.'s Mot. (dkt. # 62)), Plaintiff's Objections to this Court's previously filed Report and Recommendation (dkt. # 73), and Plaintiff's "Petition for

REPORT AND RECOMMENDATION - 16

Writ of Habeas Corpus Ad Testificandum for Production of Incarcerated Witness" (Pl.'s Pet. (dkt. # 79)) be DENIED as moot; (2) Defendants' Motion to Strike Plaintiff's "Proposed Objections to Defendants' Reply Supporting Summary Judgment Motion" (Defs.' Mot. (dkt. # 85)) be GRANTED and Plaintiff's "Proposed Objections to Defendants' Reply Supporting Summary Judgment Motion" (Surreply (dkt. # 84)) be DENIED and STRICKEN as an unauthorized responsive brief; and (3) Plaintiff's Motion for Appointment of Counsel (Pl.'s Mot. (dkt. # 78)) be DENIED as the complexity of the legal issues present in this case and Plaintiff's ability to articulate his claims do not constitute exceptional circumstances to justify appointment of counsel at this time. Plaintiff is free to move for appointment of counsel, if necessary, at a later date.

A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed three pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 7, 2020.**

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

REPORT AND RECOMMENDATION - 17

DATED this 14th day of July, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18